**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Modus LLC,<br><br>        Plaintiff/Counter-Defendant/Third-Party Defendant,<br><br>vs.<br><br>Encore Legal Solutions, Inc.,<br><br>        Defendant/Counter-Plaintiff,<br><br>and<br><br>Epiq Systems, Inc.,<br><br>        Third-Party Plaintiff. | No. CV 12-0699-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant Encore Legal Solutions, Inc. d/b/a Encore Discovery Solutions ("ELS") and Epiq Systems, Inc's ("Epiq" and together with ELS, "Encore") Motion to Stay Proceedings Pending Arbitration, or in the Alternative, For Judgment on the Pleadings (Doc. 27) and Plaintiff Modus, LLC's ("Modus") Motion to Dismiss First Amended Counterclaim and Third Party Complaint (Doc. 18).

**I.  BACKGROUND**

This dispute arose after several former employees of Defendant and Counter-Plaintiff Encore left Encore and began working for Plaintiff and Counter-Defendant Modus. Modus "utilizes a mix of off-the-shelf and proprietary products to index, ingest, and produce data," while Encore "provides products and services for electronic evidence processing, document

review platforms, and professional services for project management, data collection, and forensic consulting." Doc. 1 at ¶¶ 5-6. Encore alleges that the two companies are direct competitors. Doc. 16 at ¶ 22.

Curtis Craghead, Michael Malone, Cean Siegel, and Michael Lindsey (collectively, the "Employees") are all former employees of ELS that were hired by ELS between the years of 2001 and 2010. Doc. 16 at ¶¶ 13-16. In 2011, ELS was acquired by Epiq. Doc. 1 at ¶ 10. In connection with that acquisition, each of the Employees signed an "Employment, Confidential Information, Invention Assignment and Arbitration Agreement" (the "Agreement"). *Id.* at ¶ 11. The Agreement contained several provisions, including the following:

> **CONFIDENTIAL EPIQ INFORMATION.** I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use or disclose to any person, firm or corporation, except for the direct benefit of Epiq Systems, Inc. and its subsidiaries and affiliates (collectively, "Epiq"), without written authorization of the Board of Directors of Epiq Systems, Inc., any Confidential Information of Epiq or any of its customers. I understand that "Confidential Information" means any information of Epiq, its vendors or its customers including but not limited to any proprietary information, technical data, trade secrets or know-how, information relating to research, product plans, products, services, customer lists, customers, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration, marketing or finances, or other business information in any form including but not limited to electronic, oral, visual, or hard copy. I further understand that Confidential Information does not include any of the foregoing information or items that are publicly known and generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item(s) or information involved.
>
> **NON-COMPETITION.** . . . I agree that for a period of six (6) months immediately following the termination of my employment with the Company for any reason, I will not participate in, provide, promote, associate my name with, supervise, finance or manage (as an employee, consultant, contractor, officer, owner, director, or otherwise) any activities or services on behalf of a Competitor that are the same or similar in function or purpose to those I performed, managed, or promoted for the Company in the two (2) year period preceding the termination of my employment (or such lesser time as I was employed). This restriction will only apply in the Restricted Area. …. As used herein, a "Competitor" is any person or entity that

> provides a product and/or service that would displace or compete with a Company product or service that I was involved in or was provided Confidential Information about in the course of my employment and that the Company continues to provide as part of its business while this contract applies. The "Restricted Area" is the territories where I performed services for the Company. . . .
>
> **NON-SOLICITATION OF CUSTOMERS AND REFERRAL SOURCES.** …. I agree that for a period of twelve (12) months immediately following the termination of my employment relationship with the Company for any reason, I shall not, directly or indirectly, either on behalf of myself or for any other person, corporation, firm, company or other business entity, do any of the following acts: (a) on behalf of a Competitor, solicit, serve or cater to any of Epiq's customers or referral sources whom I solicited, served or catered to on behalf of Epiq or with whom I became acquainted during the course of my employment with the Company; (b) divert or attempt to divert any of Epiq's customers or referral sources or any of the business or patronage of such customers; or (c) call upon, influence or attempt to influence any of Epiq's customers or referral sources to transfer their business or patronage from Epiq to me or to any other person, corporation, firm, company or business entity engaged in a business similar to Epiq's business.
>
> **NON-SOLICITATION OF EPIQ PERSONNEL.** . . . I agree that during the term of my employment with the Company and for a period of twelve (12) months immediately following the termination of my employment relationship with the Company for any reason, I shall not, either directly or indirectly, either on my own behalf or on behalf of any person or entity other than Epiq, hire or attempt to hire, solicit, induce, recruit or encourage any other employees or agents of Epiq to terminate their employment or agency relationship with Epiq in order to work for any person, corporation, firm, company or business entity other than Epiq.

Doc. 1 at ¶ 12. The Agreement also contained an arbitration provision that stated, in part, that "any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance or breach of this agreement, shall be settled by arbitration . . . ." Doc. 16-1 at 4.

Between May 2011 and March 2012, all of the Employees resigned from Encore and were subsequently hired by Modus. Doc. 16 at ¶¶ 26-29. After each employee's departure, Encore sent letters to Mr. Malone, Mr. Craghead, Mr. Siegel and Modus reminding the former employees of their obligations under the Agreement. *Id.* at ¶¶ 34-35. Upon receiving no responses to the letters, on February 28, 2012, Encore submitted a demand for arbitration,

asserting "claims against Modus, Mr. Craghead, Mr. Malone, Mr. Siegel, and their respective spouses for breach of contract, breach of the implied covenant of good faith and fair dealing, torious interference with contractual relations, violation of the Arizona Trade Secrets Act, unfair competition, breach of fiduciary duty/duty of loyalty, aiding and abetting breach of fiduciary duty/duty of loyalty, and injunctive relief." Doc. 1 at ¶ 19.

The arbitration proceedings against the employees are currently underway; however, Modus refused to join the arbitration proceedings on the grounds that, as a non-signatory to the Agreement, it is not bound by the arbitration provision. Instead, Modus filed a Complaint with this Court, seeking a declaratory judgment of 1) "no tortious or other improper conduct by Modus due to unenforceability of contracts;" 2) "no tortious or other improper conduct by Modus due to non-breach of contracts;" 3) "no liability for unfair competition;" 4) "no liability for aiding and abetting breach of fiduciary duty or duty of loyalty;" and 5) "no violation of Arizona Trade Secrets Act." Doc 1 at 8-11. Encore subsequently filed an Answer, Third Party Complaint and Counterclaim (Doc. 13), which it later amended (Doc. 16).

Modus has moved to dismiss Encore's amended counterclaims (Doc. 18). Encore has moved for a stay of these proceedings pending the completion of the arbitration, or in the alternative, for judgment on the pleadings (Doc. 27). The Court first considers Encore's motion to stay.

## II. ENCORE'S MOTION TO STAY

Encore argues that the proceedings before this Court should be stayed pursuant to the United States Arbitration Act ("Arbitration Act"), 9 U.S.C. § 1 *et seq.* The Arbitration Act applies to employment contracts, except for those of transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Under § 2 of the Arbitration Act, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Arbitration Act further states the

following:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Whether an issue is "referable to arbitration" must be determined "with a healthy regard for the federal policy favoring arbitration . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Furthermore, "under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Id.* at 20. In such a case, the district court has discretion "to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Id.* at 20 n.23. Thus, enforcing the terms of the Arbitration Act in certain disputes "may require piecemeal litigation, . . . and the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) (citations omitted).

Here, the Agreement between Encore and the Employees contains a provision that states that "any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance or breach of this agreement, shall be settled by arbitration." Doc. 16-1 at 4. Modus does not dispute that this is a valid arbitration provision that applies to disputes between the parties to the Agreement, namely Encore and the Employees. Nor does Encore dispute that Modus is not a signatory to, and has otherwise not agreed to be bound by any of the provisions in, the Agreement.

Nevertheless, Encore contends that the resolution of Modus's request for declaratory judgment will require, in part, a determination of the enforceability of the provisions of the

Agreement and whether any breaches of those provisions occurred. These are issues, Encore argues, that are subject to arbitration under the Agreement because they "aris[e] out of, relat[e] to, or concern[] any interpretation, construction, performance or breach" of the Agreement. *See* Doc. 16-1 at 4. Though Encore also acknowledges that Modus, as a non-signatory to the Agreement, is not bound to arbitrate any claims against it, Encore argues that Modus "should not be permitted to perform an end-run around the Employees' and Encore's contractual agreements to arbitrate employment-related disputes and have the very allegations at issue, which are currently pending in the arbitration, decided in the first instance by this Court." Doc. 27 at 8.

In its Response, Modus largely focuses on whether it, as a party, can be compelled to join in any arbitration or be bound by the results of any arbitration to which it is not a party. Specifically, Modus argues that "[a]n overlap in factual and legal issues between Encore's dispute with Modus and its dispute with its former employees does not operate to bind Modus to an arbitration procedure to which it never agreed." Doc. 32 at 8. In Modus's view, "there is no authority supporting Encore's attempt to force Modus into arbitration or to make it bound by the results thereof where no agreement to arbitrate exists between Encore and Modus." *Id.* Modus also recognizes that the Arbitration Act "*ensures the enforceability of private agreements to arbitrate*, but otherwise does not purport to place any restriction on a nonparty's choice of a judicial forum." *Id.* (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)) (emphasis added).

Modus's arguments are unavailing. First, with regard to whether Modus can be compelled to arbitrate, Encore is not seeking such an order from this Court. Rather, Encore only argues that the *issues* of whether the Agreement is enforceable against the Employees and whether the Employees breached the agreements must be resolved in the pending arbitration proceedings. Indeed, based on the record currently before the Court, Modus likely could not be compelled to participate in such arbitration. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (recognizing a "general principle that only those who have agreed to arbitrate are obliged to do so").

Second, with regard to Modus's argument that it should not be bound by the result of any arbitration proceeding, the Supreme Court has stated that "[t]he collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985). Thus, Modus's argument is premature. Rather, at this time the Court must only determine whether any of the issues raised in this dispute are subject to the arbitration agreement, and consequently whether arbitration of those issues is mandated by the Arbitration Act.

In light of the Arbitration Act's function to "ensure[] the enforceability of private agreements to arbitrate," *Waffle House*, 534 U.S. at 289, the Court finds that a stay of these proceedings is appropriate to allow Encore to complete the ongoing arbitration with the Employees. Modus's requests for declaratory judgment involve several issues that are "referable to arbitration" under the Arbitration Act. *See* 9 U.S.C. § 3. Specifically, Modus states the following in its Complaint:

- It is not liable for tortious interference because "[t]he non-competition and non-solicitation provisions of [the Agreement] are unenforceable under Arizona law." Doc. 1 at ¶ 25.

- It is not liable for tortious interference because none of the employees "has directly or indirectly breached the [Agreement]." *Id.* at ¶ 29.

- It is not liable for unfair competition because neither Modus nor any of the employees "has unfairly used any of Encore's confidential information to divert or attempt to divert any of Encore's business relationships, expectancies, or opportunities to Modus." *Id.* at ¶¶ 33-34.

- It is not liable for aiding and abetting breach of fiduciary duty or duty of loyalty because "[n]one of [the Employees] has breached any fiduciary duty or duty of loyalty owed to Encore." *Id.* at ¶ 37.

- It is not liable for any violation of the Arizona Trade Secrets Act because "[n]one of [the Employees has] disclosed to Modus, or used on Modus's behalf, any trade secret . . . belonging to Encore." *Id.* at ¶ 42.

These allegations undoubtedly arise out of, relate to, or concern the "interpretation, construction, performance or breach" of the Agreement. Doc. 16-1 at 4. Thus, under the Arbitration Act, the Court is required to protect Encore's contractual agreement to resolve these issues in the ongoing arbitration proceedings. Moreover, to accept Modus's view that

these issues can be considered either in advance or concurrently in this forum would not only be highly prejudicial to Encore, but also would be an inefficient use of judicial resources and potentially lead to conflicting outcomes and greater uncertainty among the parties.

Accordingly, Encore's motion to stay the proceedings in this Court is granted. The Court therefore will deny all other pending motions without prejudice.

### III.   CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part and denying in part Encore's Motion to Stay Proceedings Pending Arbitration, or in the Alternative, for Judgment on the Pleadings (Doc. 27). The motion to stay is granted. The motion for judgment on the pleadings is denied without prejudice.

**IT IS FURTHER ORDERED** that Encore shall file a status report on January 15, 2013 apprising the Court of the status of the arbitration proceedings, including the projected timeline for discovery, motions and hearings, so that this Court can reevaluate the propriety and fairness of its Order staying the proceedings. Further status reports shall be filed on the fifteenth of the month every three months thereafter (with the next report due April 15, 2013) until either this case can be dismissed or the stay can be lifted. Within one week of the date of the conclusion of arbitration, Modus shall move this Court to lift the stay.

**IT IS FURTHER ORDERED** denying Modus's Motion to Dismiss First Amended Counterclaim and Third Party Complaint (Doc. 18) without prejudice.

**IT IS FURTHER ORDERED** vacating this Court's Scheduling Order (Doc. 29) and all deadlines set forth in that Order. Within one week of the date that the Court lifts the stay, the parties shall jointly move the Court to set a date for a new scheduling conference at which the Court can reconsider and reset all scheduling deadlines in this case.

///
///
///
///

1 **IT IS FURTHER ORDERED** denying all other pending motions and stipulations, including the Joint Motion for Entry of Stipulated Protective Order (Doc. 47) and Defendants' Motion to Extend Expert Disclosure Deadlines (Doc. 49), without prejudice.

DATED this 10th day of September, 2012.

_____
James A. Teilborg
United States District Judge