**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Modus LLC, | No. CV-12-00699-PHX-JAT |
| Plaintiff/Counter-Defendant/Third-Party Defendant, | **ORDER** |
| v. | |
| Encore Legal Solutions Inc., d/b/a Encore Discovery Solutions, | |
| Defendant/Counter-Plaintiff. | |
| and | |
| Epiq Systems, Inc., | |
| Third-Party Plaintiff | |

Pending before the Court is Defendant/Counter-Plaintiff's and Third-Party Plaintiff's Motion for Leave to File Third Amended Answer, Counterclaim, and Third-Party Complaint (Doc. 107).

**I.   BACKGROUND**

This dispute arises from Plaintiff Modus LLC's ("Modus") hiring of former employees of Defendant Encore Legal Solutions, Inc. ("Encore"). Encore, which is wholly owned by Epiq Systems, Inc. ("Epiq"), alleges it directly competes with Modus in the electronic discovery industry. (Doc. 68 at 9, 15). The employees at issue, Curtis Craghead, Michael Malone, Cean Siegel, and Michael Lindsey (collectively, the "Employees") were employed by Encore and each signed an employment agreement (the

"Employment Agreement"). (Doc. 68 at 10–11). The Employment Agreement contained several restrictive covenants, including a confidentiality provision and a non-compete provision (the "Non-Compete Agreement"):

> **CONFIDENTIAL EPIQ INFORMATION.** I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use or disclose to any person, firm or corporation, except for the direct benefit of Epiq Systems, Inc. and its subsidiaries and affiliates (collectively, "Epiq"), without written authorization of the Board of Directors of Epiq Systems, Inc., any Confidential Information of Epiq or of any of its customers. I understand that "Confidential Information" means any information of Epiq, its vendors or its customers including but not limited to any proprietary information, technical data, trade secrets or know-how, information relating to research, product plans, products, services, customer lists, customers, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration, marketing or finances, or other business information in any form including but not limited to electronic, oral, visual, or hard copy. I further understand that Confidential Information does not include any of the foregoing information or items that are publicly known and generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item(s) or information involved.
>
> * * *
>
> **NON-COMPETITION.** . . . I agree that for a period of six (6) months immediately following the termination of my employment with the Company for any reason, I will not participate in, provide, promote, associate my name with, supervise, finance or manage (as an employee, consultant, contractor, officer, owner, director, or otherwise) any activities or services on behalf of a Competitor that are the same or similar in function or purpose to those I performed, managed, or promoted for the Company in the two (2) year period preceding the termination of my employment (or such lesser time as I was employed). This restriction will only apply in the Restricted Area. . . . As used herein, a "Competitor" is any person or entity that provides a product and/or service that would displace or compete with a Company product or service that I was involved in or was provided Confidential Information about in the course of my employment and that the Company continues to provide as part of its business while this contract applies. The "Restricted Area" is the territories where I performed services for the Company. . . .

(Doc. 71-1 at 34).

Each of the Employees resigned from Encore and subsequently was hired by

- 2 -

1  Modus. (Doc. 68 at 16–17). After Encore confronted Modus about hiring the Employees
2  in alleged violation of the Employment Agreement, Modus brought this action for a
3  declaratory judgment. (Doc. 1 at 6–8). Encore (along with Epiq as a third-party plaintiff)
4  counterclaimed for tortious interference with contractual relations and violation of the
5  Arizona Trade Secrets Act, and sought injunctive relief. (Doc. 16; Doc. 68 at 22–26). The
6  Court stayed the proceedings pending arbitration between Encore and the Employees.
7  (Doc. 56). Following the lifting of the stay (Doc. 65) and the filing of the Second
8  Amended Answer, Counterclaim and Third-Party Complaint (Doc. 68), Modus filed a
9  motion to dismiss (Doc. 69). The Court issued a Federal Rule of Civil Procedure ("Rule")
10 16 Scheduling Order setting the deadline to amend the complaint as September 27, 2013,
11 and the deadline to amend the answer as October 11, 2013. (Doc. 74). On December 17,
12 2013, the Court issued an Order granting in part and denying in part Modus' Motion to
13 Dismiss the Second Amended Counterclaim and Third-Party Complaint. (Doc. 97).

14 On October 17, 2013, the Arizona Court of Appeals, as a matter of first impression
15 for Arizona, held that the Arizona Uniform Trade Secrets Act ("AUTSA") does not
16 preempt a common-law tort claim based on the misuse of confidential information that
17 does not rise to the level of a trade secret. *Orca Commc'ns Unltd., LLC v. Noder*, 314
18 P.3d 89, 98 ¶ 30 (Ariz. Ct. App. 2013). On January 21, 2014, Encore and Epiq filed their
19 Motion for Leave to File Third Amended Answer, Counterclaim, and Third Party
20 Complaint, seeking to add "a [new] claim for unfair competition due to misappropriation
21 of confidential information that does not rise to the level of trade secret information since
22 this claim is no longer preempted by the AUTSA," based on the *Orca* decision. (Doc. 107
23 at 4).

24 **II.  LEGAL STANDARD**

25 Generally, Rule 15(a) governs a motion to amend pleadings to add claims or
26 parties. However, in the present case, Rule 16 also applies because Plaintiffs requested
27 leave to amend their complaint after the Rule 16 Scheduling Order deadline expired.
28 Therefore, it is appropriate to discuss both Rule 15 and Rule 16.

Rule 15(a) provides in pertinent part:

> (1) A party may amend the party's pleading once as a matter of course within:
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Although the decision whether to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In exercising its discretion with regard to the amendment of pleadings 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.' Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981))**.** "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).

The liberal policy in favor of amendments, however, is subject to limitations. After the defendant files a responsive pleading, leave to amend is not appropriate if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (quoting *Yakima Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)). "The party opposing amendment bears the burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend. *DCD Programs, Ltd.,* 833 F.2d at 187; *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless opposing party makes

"an affirmative showing of either prejudice or bad faith").

Prejudice can result where a defendant would be forced to participate in additional discovery. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Extending discovery can also create undue delay. *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998). Regarding futility, "[a] district court does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citation omitted); *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient."). Similarly, a motion for leave to amend is futile if it can be defeated on a motion for summary judgment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). "However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller*, 845 F.2d at 214.

Rule 16, on the other hand, applies to pretrial conferences and scheduling orders. This Rule provides, in pertinent part:

> (1) Except in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order:
> (A) after receiving the parties' report under Rule 26(f); or
> (B) after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference or by telephone, mail, or other means.
> . . . .
> (3) The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.
> . . . .
> (4) A schedule may be modified only for good cause and with the judge's consent.

Fed. R. Civ. P. 16(b). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Generally, to meet its burden under Rule 16's "good cause" standard,

the movant may be required to show:

> (1) that [the movant] was diligent in assisting the Court in creating a workable Rule 16 [O]rder; (2) that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [the movant's] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [the movant] was diligent in seeking amendment of the Rule 16 [O]rder, once it became apparent that [the movant] could not comply with the [O]rder.

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations omitted). The Ninth Circuit has also recognized that, "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609. However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citations omitted).

With respect to the interplay between Rules 16 and 15(a), "[a]s the Ninth Circuit explained in *Johnson* . . . once the district court has filed a pretrial scheduling order pursuant to Rule 16 . . . a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Jackson*, 186 F.R.D. at 607; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (finding that a party seeking to amend a pleading after the scheduling order date must first show "good cause" for not amending the complaint sooner, and if "good cause" is established, the party must demonstrate that the amendment was proper under Rule 15). "If [the Court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). Accordingly, the Court will first evaluate Plaintiffs' Motion under Rule 16, and

then, if necessary, under Rule 15(a).

## III. ANALYSIS

Encore and Epiq claim that they have been diligent in seeking this amendment, because "[t]he *Orca* decision was issued on October 17, 2013 – after the deadline to amend set forth in the Scheduling Order." (Doc. 107 at 6). However, more than three months passed from the *Orca* decision on October 17, 2013 until Encore and Epiq filed this motion on January 21, 2014. In their reply, Encore and Epiq assert only that "their new counsel needed time to evaluate the status of the pleading and develop case strategy," since they were not substituted as attorneys of record until January 8, 2014. (Doc. 126 at 4). That argument still does not address the months that passed from the *Orca* decision in October until January, when Encore and Epiq obtained new counsel. Additionally, even if Encore and Epiq's original counsel acted carelessly in failing to identify any new claims available under the *Orca* decision, that reason does not constitute the good cause required by Rule 16. *See Ticktin v. Carole Fabrics*, 2007 WL 38330, at *2 (D. Ariz. Jan. 5, 2007); *see also Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").

Encore and Epiq fail to demonstrate the diligence necessary to meet Rule 16's good cause standard. Therefore, the Court declines to exercise its discretion to modify its Rule 16 Scheduling Order, and an application of Rule 15(a) is not necessary. *See Sosa*, 133 F.3d at 1419 (holding that the Court need not evaluate Rule 15(a) unless the movant first meets the "good cause" requirement of Rule 16). Accordingly, Encore and Epiq's Motion for Leave to File Third Amended Answer, Counterclaim, and Third-Party Complaint (Doc. 107) is denied.

## IV. CONCLUSION

Based on the foregoing,

/ /

/ /

/ /

- 7 -

**IT IS ORDERED** that Defendant/Counter-Plaintiff's and Third-Party Plaintiff's Motion for Leave to File Third Amended Answer, Counterclaim, and Third-Party Complaint (Doc. 107) is denied.

Dated this 16th day of April, 2014.

James A. Teilborg
Senior United States District Judge